IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELVIN D. OATTS,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CIV-07-843-F |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his concurrent applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

---

[1] Plaintiff's action was originally filed under the name "Kelvin D. Oates." However, Plaintiff has since revised the spelling of Plaintiff's last name in subsequent pleadings and briefing without explanation to "Kelvin D. Oatts." "Oatts" is the spelling of Plaintiff's last name throughout his administrative record. Consequently, as it appears Plaintiff's counsel inadvertently misspelled his last name in the initial pleading, the Clerk of the Court is directed to amend the spelling of Plaintiff's name in the Court's record to "Kelvin D. Oatts" to coincide with the spelling of Plaintiff's name in his administrative record and subsequent pleadings.

I. Background

Plaintiff protectively filed his applications for disability insurance and supplemental security income benefits on February 23, 2005. (TR 77-79, 80-81, 360-361). Plaintiff stated that he was born on May 3, 1965, and alleged that he became disabled on January 1, 2003. (TR 77). Plaintiff alleged that he was disabled due to panic and anxiety attacks and manic depressive and bipolar disorders. (TR 85). Plaintiff indicated he stopped working on December 30, 2004. (TR 86). He described previous work as a construction and landscaping laborer and line cook. (TR 86, 91). Plaintiff stated that he completed the twelfth grade in 1983. (TR 89). Plaintiff's applications were administratively denied. (TR 40, 41, 358, 359). At Plaintiff's request, a hearing *de novo* was conducted on January 3, 2007, before Administrative Law Judge Moser ("ALJ"). (TR 385-411). At this hearing, Plaintiff and a vocational expert ("VE") testified. Following the hearing, the ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 11-21). Plaintiff's request for review of the administrative decision by the Appeals Council was denied. (TR 4-7). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992).  However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2008); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail).  Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that

the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

Pertinent to this case, the agency has established regulations to implement a provision of the Contract with America Advancement Act , Pub. L. 104-121, dictating that "[a]n individual shall not be considered to be disabled .... if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). If the ALJ determines that a claimant is disabled but there is medical evidence in the record of drug addiction or alcoholism, the ALJ must determine whether that substance abuse is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). If the ALJ finds that a claimant's "remaining limitations would not be disabling, [the ALJ] will find that [the claimant's] drug addition or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(2)(i), 416.935(b)(2)(i). In contrast, drug addiction or alcoholism is not a "contributing factor material to the determination of disability" if the claimant still would be disabled even if the person stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

III. ALJ's Decision

Following the sequential evaluation procedure adopted by the agency, the ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through the relevant time period and that Plaintiff had not engaged in substantial gainful

activity since January 1, 2003, his alleged disability onset date. (TR 13-14). At step two, the ALJ found that Plaintiff had two severe impairments due to substance addiction disorder and seizure disorder. The ALJ specifically found that Plaintiff's "mental, anxiety, and affective disorders" were not severe and that Plaintiff's mental impairments had resulted in only mild functional limitations.. (TR 14). At step three, the ALJ found that Plaintiff's substance addiction disorder and seizure disorder did not satisfy the requirements in the agency's Listing of Impairments for impairments deemed disabling *per se*. (TR 14). At the fourth step, the ALJ found that, considering Plaintiff's substance addiction disorder, Plaintiff had the residual functional capacity ("RFC") to perform work at the medium exertional level. The ALJ found that Plaintiff's ability to perform work at this level was limited by the claimant's inability to work a complete workday without interruptions from psychologically-based symptoms and his inability to perform at a consistent pace without an unreasonable number of rest periods and also that he would be required to work in relative isolation with limited contact with peers and supervisors. (TR 15). In light of this RFC for work and Plaintiff's substance addiction disorder, the ALJ found that Plaintiff was unable to perform his past relevant work as a construction laborer, forklift operator, lawn service worker, or cook. (TR 16). The ALJ further found that, considering Plaintiff's substance addiction disorder and resulting RFC for work, there were no jobs available that Plaintiff could perform. (TR 17). Following the regulatory framework for determining the disability issue in connection with substance abuse, the ALJ found that if Plaintiff stopped his substance use Plaintiff would continue to have severe impairments and would have the RFC to perform

work at the medium exertional level compromised by an inability to work around moving machinery or unprotected heights. (TR 18). If Plaintiff stopped his substance use, the ALJ found that Plaintiff would have the RFC to perform his previous job as a cook and Plaintiff would therefore not be disabled if he ceased substance use. (TR 20-21).

IV. Step Two

Plaintiff asserts that the ALJ erred at step two in failing to consider the combined effects of Plaintiff's severe impairments and Plaintiff's impairments due to bipolar disorder, attention deficit disorder with hyperactivity, panic disorder with agoraphobia, and diabetes. "At step two, the ALJ must 'consider the combined effect of all of [the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].'" Langley v. Barnhart, 373 F.3d 1116, 1123-1124 (10th Cir. 2004)(quoting 20 C.F.R. § 404.1523).

The ALJ's decision reflects the ALJ's consideration of Plaintiff's "mental, anxiety, and affective disorders" and the ALJ's finding that these mental impairments were not severe. (TR 14). Specifically, the ALJ found that although Plaintiff had been diagnosed with bipolar disorder "his symptoms do not satisfy the criteria for an affective disorder." (TR 14). The ALJ also noted that Plaintiff's treating psychiatrist, Dr. Al-Khouri, assessed Plaintiff with bipolar disorder, with possible psychotic features, panic disorder with agoraphobia, and polysubstance dependence in early sustained remission of five months. (TR 16). The ALJ further noted that Plaintiff was subsequently diagnosed with bipolar disorder, attention deficit disorder with hyperactivity, polysubstance abuse, and seizure disorder during inpatient

treatment at a psychiatric hospital in October 2006. (TR 16). Throughout the evaluation process memorialized in the ALJ's decision, the ALJ referred to treating physicians' and mental health professionals' notes concerning mental status and physical examinations of Plaintiff, as well as notes of therapy sessions at Plaintiff's treating mental health clinic and found that Plaintiff's mental problems subsided during an extended period of sobriety in 2005. (TR 14-16, 19). This conclusion is consistent with the findings of the agency's nonexamining medical consultant in December 2005 that Plaintiff's mental impairments were not severe, that Plaintiff's mental impairments had resulted in only mild functional limitations, and that "most of [Plaintiff's] mental problems were drug induced and have since subsided due to his sobriety. Med[ication]s appear to be helping as well." (TR 221). The ALJ also noted that Plaintiff's treating medical clinic's notes reflecting that Plaintiff's diabetes was controlled with diet, exercise, and weight loss. (TR 19). The ALJ did not ignore the evidence of mental impairments and considered the combined impact of Plaintiff's multiple mental impairments. The ALJ's decision shows that ALJ considered the medical evidence of Plaintiff's mental and physical impairments in determining the relevant issues. Moreover, "any error here became harmless when the ALJ reached the proper conclusion that [Plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." Carpenter v. Astrue, __ F.3d __, 2008 WL 3892065, * 1 (10th Cir. 2008).

V. RFC for Work if Substance Abuse Ceased

The ALJ employed the proper regulatory framework for evaluating Plaintiff's

substance addiction disorder. The ALJ found that considering Plaintiff's substance addiction disorder Plaintiff was disabled and that Plaintiff's substance addiction disorder was a contributing factor to the determination of disability.  The ALJ further found that Plaintiff's seizure disorder would remain if Plaintiff stopped using drugs and alcohol and that Plaintiff's remaining limitations due to the seizure disorder would not be disabling as Plaintiff would retain the capacity to perform his past relevant work as a cook.

Plaintiff contends that there is not substantial evidence to support the ALJ's finding that if Plaintiff ceased substance use he would retain the capacity to perform his previous work as a cook.  Plaintiff refers to the VE's testimony at the administrative hearing in response to questioning by Plaintiff's counsel.  At the hearing, the VE was asked by Plaintiff's attorney whether there would be any danger involving Plaintiff's performance of his previous job as a cook in view of his seizure disorder. (TR 410).  The VE responded that if Plaintiff was taking medication for the seizure disorder that stabilized him, the cook's job would not be dangerous for Plaintiff. (TR 410).  However, if the medication was not stabilizing Plaintiff then Plaintiff "certainly could burn himself, or drop something hot, boiling soups or sauces or something on other [sic], other workers.  That's certainly a possibility if the medication is not appropriate.  But ... the record indicated in his work history that he worked for, as a cook for several years.  And evidentally [sic], the medication was working, or he would not have been able to do that." (TR 410).

Plaintiff points to the lack of evidence in the record showing that Plaintiff had a seizure disorder at the time he was working as a cook.  The medical record reflects that

Plaintiff did not seek treatment for a seizure-related impairment until May 2006, when he sought treatment at a hospital emergency room in Indiana. (TR 330-331). There, Plaintiff reported having "had his last seizures two weeks ago." (TR 331). The attending physician noted that Plaintiff's family witnessed a tonic/clonic seizure lasting two minutes although Plaintiff showed no symptoms at the hospital and a neurological examination was normal. (TR 331). Plaintiff stated that he had never taken medication for seizures. (TR 331). Anti-seizure medication was prescribed, and Plaintiff was instructed not to drive until he saw a neurologist. (TR 331-332). In June 2006, Plaintiff requested treatment for seizures at his treating medical clinic in Oklahoma City. (TR 259). Plaintiff stated that he had been experiencing seizures "for almost 1 year" but did not seek medical treatment until two weeks before when he experienced a seizure in Indiana, and he stated that he had been prescribed anti-seizure medication at that time. (TR 259). Plaintiff was assessed with a seizure disorder and directed to obtain a magnetic resonance imaging ("MRI") scan of his brain "as he has fairly new onset seizures and he has not had an imaging study." (TR 259). Plaintiff's treating psychiatrist posited that the seizure he experienced in May 2006 was the result of side effects of a medication he had previously been prescribed. (TR 227). The medication was discontinued. (TR 227). Plaintiff stated in a follow-up at his treating medical clinic in June 2006 that he had not experienced a seizure for one week. (TR 257). He was prescribed anti-seizure medication and advised to return in one month for follow-up treatment to check his medication level "or earlier if he has breakthroughs [sic] seizures." (TR 257). There is no evidence in the medical record that Plaintiff obtained an MRI or experienced further seizures.

Plaintiff was prescribed anti-seizure medication during a two-week hospitalization for drug and alcohol treatment in October 2006 based on his statement that he had a seizure disorder. (TR 275-276, 279). Plaintiff was again prescribed anti-seizure medication in November 2006 for his reported "history of seizure disorder." (TR 303). Plaintiff stated at that time that he "started seizures probably 10 yrs. ago," although he specifically described only his long-term history of illegal drug use ("crack [and] powder cocaine") for fifteen years. (TR 305). Anti-seizure medication was prescribed for Plaintiff again in December 2006, and Plaintiff denied any complaints at that time. (TR 301). However, at the administrative hearing in January 2007 Plaintiff stated that the anti-seizure medication prescribed for him decreased the frequency of his seizures but that he experienced seizures occurring approximately once a month and lasting an hour. (TR 404-405).

Plaintiff testified that he previously worked as a cook for four years at a restaurant. (TR 86, 391). Plaintiff did not describe seizures as an impairment that limited his ability to work or his daily functioning. (TR 85, 111-118, 126, 132, 136). The ALJ relied on the medical record in finding that Plaintiff's statements were not entirely credible. (TR 19). With respect to Plaintiff's seizure disorder, the ALJ noted that Plaintiff's seizure disorder was controlled with medication. (TR 19). Plaintiff points only to his own testimony as support for his assertion that the seizure disorder was not controlled with medication. However, there is no objective medical evidence supporting his testimony, and he stated he had no complaints at a physical examination at his treating medical clinic in December 2006, one month before his administrative hearing. No error occurred in this respect, and there is

substantial evidence in the record to support the ALJ's finding that Plaintiff was not disabled within the meaning of the Social Security Act because he retained the capacity to perform his past relevant work as a cook.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before     September 25th   , 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this     5th     day of    September    , 2008.

*/s/ Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE